**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CLIFFS SALES COMPANY, ) | CASE NO. 1:07 CV 485 |
| ) | 1: 07 CV 1466 |
| Plaintiff, ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| AMERICAN STEAMSHIP COMPANY, ) | |
| ) | MEMORANDUM OPINION |
| Defendant. ) | AND ORDER |
| _____) | |
| AMERICAN STEAMSHIP COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NORTHSHORE MINING COMPANY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

This matter comes before the Court upon the Motion of Defendant American Steamship Company ("ASC") for Judgment as a Matter of Law, or in the Alternative, for a New Trial. (ECF #140 in Case No. 07 CV 485 and ECF #113 in Case No. 07 CV 1466).  The Motion of Defendant Oglebay Norton Marine Services ("Oglebay") for Judgment as a Matter of Law, or in the Alternative, for a New Trial (ECF #114 in Case No. 07 CV 1466) is also before the Court.[1] For the

---

[1] The claims between Cliffs Sales Company ("Cliffs") and ASC and between Cliffs and Oglebay (from both cases) were adjudicated in one trial from May 13, 2008 through May 20, 2008.  The jury's verdicts resolved all of the claims in Case No. 07 CV 485 and some of the claims in Case No., 07 CV 1466.  The claims between ASC and Oglebay were bifurcated from the claims involving Cliffs and were not tried in May.  A trial on those claims (which exist only in Case No. 07 CV 1466) is set for November 17, 2008.  Further, Oglebay has withdrawn its Motion for Judgment as a Matter of Law and New Trial based upon contract formation/no meeting of the minds. See ECF #123.  Oglebay retains its Motion for a New Trial based upon the improper admission of hearsay evidence and Cliffs' counsels' inappropriate references to the timing of

reasons that follow, Defendants' Motions are denied.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Cliffs brought this action (Case No. 07 CV 485) against ASC alleging breach of contract and unjust enrichment seeking damages and a declaratory judgment regarding overcharges and winter ore shuttles under the terms of the Vessel Transportation Agreement ("VTA").  ASC filed an answer and counterclaims seeking a declaratory judgment on the alleged overcharges, the winter ore shuttles and on whether Cliffs anticipatorily breached the VTA and the parties' rights and obligations under the VTA. Defendant ASC filed another action (Case No. 07 CV 1466) asserting its counterclaims against Cliffs and adding claims against Defendant Oglebay. Cliffs filed an answer and counterclaims and cross claims against ASC and Oglebay which consist of its claims for breach of contract, unjust enrichment and declaratory judgment raised in Case No. 07 CV 485.

The claims between Plaintiff Cliffs and the shipping company defendants ASC and Oglebay were presented to a jury.  Specifically, the parties presented evidence regarding their positions on what fuel surcharges were permitted under the May 1, 2002 VTA and whether the VTA required ASC to make winter ore movements from the Cleveland Bulk Terminal to the Mittlal Ore Dock.

The jury was asked to answer three interrogatories and return verdicts on Cliffs' claim of breach of contract.  The jury answered the first interrogatory in the affirmative, finding that Cliffs had proven by a preponderance of the evidence that a contract was created between Cliffs and Oglebay in the May 1, 2002 Vessel Transportation Agreement.  Secondly, the jury found by a

---

production of documents during discovery.

preponderance of the evidence that Oglebay and ASC may charge a 1/2 cent fuel adjustment on cargoes loaded at the Cleveland Bulk Terminal ONLY where a non-USA vessel delivered the iron ore pellets to the Cleveland Bulk Terminal.  Finally, the jury found by a preponderance of the evidence that the VTA did not obligate ASC to deliver ore to the Mittlal Ore Dock from Cleveland Bulk Terminal between January 15 and March 25 ("winter ore movement"). The jury returned a verdict in favor of Cliffs and against Oglebay on Cliffs' breach of contract claim and awarded damages in the amount of $1,746,939.24.  The jury also returned a verdict in favor of Cliffs and against ASC on Cliffs' breach of contract claim and awarded damages in the amount of $2,000,000.

ASC  moves for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50 (b) on the ground that the conflicting testimony presented at trial demonstrates that there was no meeting of the minds regarding the price provision of the VTA and thus no reasonable juror could conclude that Cliffs and Oglebay had the requisite mutual assent to form a valid and enforceable contract. Alternatively, ASC and Oglebay argue that the verdicts are against the manifest weight of the evidence as a result of the Court's error in admitting an August 2004 "hearsay e-mail" and/or Cliffs' counsel's repeated reference to late production of the email and/or Cliffs' counsel's statement during closing argument that the parties agreed that the VTA is a valid contract, thus warranting a new trial.

## **DISCUSSION**

### **I. Motion for Judgment as a Matter of Law**

Fed.R.Civ.P. 50(b) provides that if a court does not grant a motion for judgment as a matter of law made after the close of all the evidence and the party renews its request after a

3

verdict is returned, the court may (1) allow the judgment to stand, (2) order a new trial, or (3) direct entry of judgment as a matter of law. The "standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion." Wright & Miller, *Federal Practice and Procedure*: Civil 2d § 2537, p. 347 (footnote omitted).

A federal court sitting in diversity must apply the forum state's standard of review when a Rule 50 challenge is made to the sufficiency of the evidence supporting the jury's findings. *Aetna Casualty and Surety Company v. Leahey Construction Company of America, Inc.,* 219 F.3d 519, 532 (6 Cir.2000)( *citing Palmer v. Fox Software, Inc.,* 107 F.3d 415, 418 (6th Cir.1997)). Under Ohio law,

> [t]he test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict (now known as a motion for judgment as a matter of law in the federal courts) is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

*Aetna Cas. And Sur. Co., v. Leahey Construction Co.,* 219 F.3d 519, 532 (6th Cir. 2000)quoting *Posin v. A.B.C. Motor Court Hotel, Inc.,* 45 Ohio St.2d 271, 344 N.E.2d 334, 338 (1976).

ASC asserts that the evidence adduced at trial showed that there was no meeting of the minds between Cliffs and Oglebay on the price provision in the VTA, as required to form a valid and binding contract. Where there is no meeting of the minds on the price term, there is no contract and the plaintiff's breach of contract claim fails as a matter of law. See *Alligood v.*

*Proctor & Gamble Co.*, 594 N.E.2d 668, 669 (Ohio App. 1st Dist. Sep. 25, 2002).

ASC points to the contrasting testimony of Mr. Gallagher from Cliffs and Mr. Siragusa from Oglebay, the men who negotiated the VTA, regarding when the half cent fuel surcharge for cargoes loaded at Cleveland Bulk Terminal and shuttled to the Mittal Ore Dock could be charged under the VTA. ASC also points to Mr. Siragusa's testimony to the effect that if the VTA had been written in a way consistent with Cliff's interpretation of when the half cent surcharge could be imposed, he would never have signed the agreement. ASC argues that these widely divergent views demonstrate that there was no meeting of the minds on the price provision of the VTA. ASC further contends that the jury's finding that a contract had been formed was due to Cliffs' counsels' statement in closing argument that a valid contract was formed so long as there was a valid assignment from Oglebay to ASC and counsel's further reference to the first interrogatory regarding contract formation and his assertion that there has not even been a dispute about it from day one–that it has only been a dispute about what the contract means.

Cliffs responds that whether there has been a meeting of the minds is a question of fact to be determined from all of the relevant facts and circumstances. While Mr Gallagher and Mr. Siragusa disagreed on the fuel adjustment provision, it was up to the jury to make any credibility evaluations and accept or reject the testimony of each man as they saw fit. Further, the jury had to consider the evidence submitted during trial regarding the negotiation of the VTA, as well as the parties' conduct under the VTA during the six years since it was signed and implemented. The Court finds that there was sufficient evidence adduced at trial to support the jury's findings and verdicts.

Moreover, the Court rejects ASC's contention that the jury's findings regarding contract

5

formation could only have been the result of Cliffs' counsels' statements during closing argument. First, ASC did not object to the statements when they were made.  Secondly, the Cliffs' counsels' statements reflect evidence that was admitted during trial–Oglebay did assign the VTA to ASC and it is fair to argue that ASC would not obligate itself under the VTA if no contract had been formed.  Moreover, ASC never argued that a contract had not been formed during its opening statement, during trial or in closing arguments.  Finally, even if Cliffs' counsels' statements were misleading or did not fairly represent the evidence adduced at trial, the Court repeatedly admonished the jury that the statements of counsel were not evidence.  Accordingly, the Court finds that ASC was not prejudiced by these statements.  Thus, viewing the evidence in a light most favorable to Cliffs, the Court finds that there was substantial evidence to support the jury's finding that a contract had been formed.  ASC's Motion for Judgment as a Matter of Law is denied.

**II.  Motion for a New Trial**

Moving on to Defendants' Motions for a New Trial, ASC asserts that the reasons set forth to support judgment as a matter of law (no meeting of the minds on shuttle fuel adjustment and Cliffs' counsel's comment that the parties' agreed that the VTA is a valid contract) also support its request for a new trial.  That is, the jury's conclusion is against the manifest weight of the evidence, which warrants a new trial.

Oglebay moves for a new trial based on the cumulative prejudicial effect of admission of an August 2004 hearsay e-mail and/or improper comments from counsel based on the timing of production of the August 2004 e-mail.

In contrast to judgment as a matter of law, "[t]he authority to grant a new trial is confided almost entirely to the exercise of discretion on the part of the trial court." *Williamson v. Owens-*

*Illinois, Inc*., 787 F.2d 594, 1986 WL 16533 at *3 (6th Cir. 1986) (*quoting* 11 Wright & Miller, *Federal Practice and Procedure*, § 2806 (1973)). When reviewing a motion for a new trial, a court "should indulge all presumptions in favor of the validity of the jury's verdict." *Brooks v. Toyotomi Co.*, 86 F.3d 582, 588 (6th Cir. 1996)(*citing Ragnar Benson, Inc. v. Kassab*, 325 F.2d 591, 594 (3rd Cir. 1963)). A jury verdict must be upheld so long as there is any competent and substantial evidence in the record to support it, even if contradictory evidence was presented. *Green v. Francis*, 705 F.2d 846, 849 (6th Cir. 1983).

Nevertheless, on a motion for new trial, as contrasted with a motion for judgment as a matter of law, the judge may set aside the verdict even though there exists substantial evidence to support it. *McDonald v. Petree*, 409 F.3d 724 (6th Cir. 2005). However, the district court "should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result." *Brooks*, 86 F.3d at 588. The Sixth Circuit has explained that a "seriously erroneous result" would be evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion *i.e.*, the proceedings having been influenced by prejudice or bias. *Holmes v. City of Massillon*, 78 F.3d 1041 (6th Cir. 1996).

Moreover, a motion for a new trial will not be granted unless the moving party suffered prejudice. *Tompkin v. Philip Morris USA, Inc.,* 362 F.3d 882, 891 (6th Cir.2004)(citing *Erskine v. Consol. Rail Corp.,* 814 F.2d 266, 272 (6th Cir.1987)) (holding that a new trial will not be granted on the ground that surprise evidence was admitted unless the moving party was prejudiced). Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial. *Morales v.*

7

*American Honda Motor Co., Inc.,* 151 F.3d 500, 514 (6th Cir.1998).

As detailed above with respect to ASC's Motion for Judgment as a Matter of Law, there was sufficient evidence in the record to support the Jury's findings. ASC offers no additional reason why the jury's verdicts are "seriously erroneous." Accordingly, the Court will not interfere with the Jury's properly supported verdicts. ASC's Motion for a New Trial is denied.

Moving on to Oglebay's Motion for a New Trial, Oglebay contends that the Court erroneously admitted an August 2004 e-mail from John Macuski, a former controller for Oglebay, to Michelle Raymond into evidence. Mr. Macuski testified at trial by video deposition. In his testimony, Mr. Macuski confirmed that the e-mail contained his interpretation of the VTA at the time the e-mail was sent. Both Oglebay and ASC cross-examined Mr. Macuski on the e-mail and the facts and circumstances around which it was produced. The e-mail was admitted into evidence over Oglebay's objection after Cliffs' counsel noted that Mr. Macuski testified about the e-mail. Oglebay contends that the e-mail is hearsay–an out of court statement used by Cliffs to attempt to prove that Mr. Macuski's interpretation of the VTA accurately described Oglebay's interpretation of the VTA. As such Oglebay contends, the e-mail is inadmissable unless it is defined as non-hearsay under Rule 801(d) or is subject to an exemption under Rule 803 as a business record.

Oglebay's objection is misplaced because the e-mail is not hearsay as it was not used to prove the truth of the statement. Rather, the e-mail was used to test the witness's credibility. In any event, admission of the physical copy of the e-mail was not prejudicial to Oglebay as the content of the e-mail was carefully examined during the testimony of Mr. Macuski, a copy of the e-mail was blown up and presented to the jury for demonstration and copies of the e-mail were given to the jury to read. These actions were appropriate uses of an exhibit used in connection

with a witness who prepared the exhibit.  The witness testified regarding his recollection of the e-mail and his memory of the events and issues addressed in the e-mail. Admission of the e-mail into evidence merely permitted the exhibit to go to the jury room during deliberation along with the other admitted exhibits.  Regardless of whether the e-mail was physically in the jury room, the jury was already properly aware of its contents and the testimony of Mr. Macuski about the e-mail.

Oglebay also objects to Cliffs' counsel's alleged repeated reference to the fact that it discovered the e-mail two weeks before trial.  Oglebay contends that these comments were designed to make the jury believe that Oglebay had withheld evidence and that Cliffs had to force production of the e-mail.  Oglebay provides no transcript cites to these references.  Throughout Mr. Macuski's testimony shown at trial there was only one reference to when the e-mail was obtained by Cliffs and that is ambiguous.  Cliffs' counsel asked Mr. Macuski if he had gotten any response to the e-mail that he could recall and Mr. Macuski said he had not as he recalled.  At that point Cliffs counsel said: "And is the next you heard about it is when I called you after I received this e-mail a couple weeks ago?" (Transcript, p.399, lines 5-6).  While Oglebay contends that the Jury could take from this comment that it withheld evidence, a more likely conclusion is that Mr. Macuski gave no more thought to the e-mail or the VTA fuel surcharges after this e-mail exchange in August 2004.  In any event, the question was relevant and appropriate in this line of questioning.

Oglebay has failed to demonstrate that the Jury reached a "seriously erroneous result" and its Motion for a New Trial is denied.

**CONCLUSION**

For the reasons set forth above, the Motion of Defendant ASC for Judgment as a Matter of Law, or in the Alternative, for a New Trial. (ECF #140 in Case No. 07 CV 485 and ECF #113 in Case No. 07 CV 1466) is DENIED.  In addition, the motion of Defendant Oglebay for a New Trial (ECF #114 in Case No. 07 CV 1466) is DENIED.

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　  /s/Donald C. Nugent
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　DONALD C. NUGENT
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

DATED:  August 18, 2008