**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLIFFS SALES COMPANY, | ) | CASE NO. 1:07 CV 485 |
| | ) | 1: 07 CV 1466 |
| Plaintiff, | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| AMERICAN STEAMSHIP COMPANY, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendant. | ) | AND ORDER |
| | ) | |
| AMERICAN STEAMSHIP COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHSHORE MINING COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Cliffs Sales Company ("Cliffs") Motion to Amend the Judgment (ECF #116 in ) Case No. 07 CV 485 and 07 CV 1466.

## I. Prejudgment Interest

First Cliffs moves to Amend the Judgment in order to include prejudgment interest on its contract claim pursuant to Ohio Rev. Code § 1343.03(A). All parties agree that Ohio's prejudgment interest statute and Ohio law governs any prejudgment interest award in this diversity action. See *FDIC v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000). Further, neither American Steamship Company ("ASC") nor Oglebay Norton Marine Services Company ("Oglebay") deny that Cliffs is entitled to prejudgment interest on the judgment. See *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 693 (6th Cir. 2000)("if a

favorable judgment award has been obtained by plaintiff, plaintiff has a right under [section] 1343.03(A) to an interest award as a matter of law, and the trial court has no discretion not to grant any interest award."). Rather, ASC and Oglebay object to the interest calculation set forth by Cliffs.

Cliffs asserts that the interest should be compounded annually. Both ASC and Oglebay contend that Section 1343.03(A) authorizes only simple interest. Ohio's prejudgment interest statute does not explicitly provide for simple or compound interest nor has the Ohio Supreme Court addressed this issue. While Cliffs cites cases from the Seventh Circuit in support of compounding interest to fully compensate a plaintiff, the practice in Ohio's appellate courts appears to be to award simple interest. See *Viock v. Stowe-Woddward Co.*, 59 Ohio App. 3, 7 (1989)(awarded simple interest on judgment); *Berdyck v. Shinde,* 128 Ohio App. 3d 68, 88(1998)*; Williams v. Colejon Mech. Corp.*, 1995 WL 693129, Ohio App. 8th Dist. Nov. 22, 1995 at *3 (unreported)(reversed award of compounded interest in a breach of contract case); *Romanoff Electric Corp. v. Ohio Dep't of Administrative Svcs., et al.*, 1994 WL 312923, Ohio App. 19th Dist., June 30, 1994 at *8 (unreported). Following the majority of Ohio courts of appeal, simple interest will be awarded in this action.

ASC argues that Cliffs seeks prejudgment interest on amounts it is not owed, specifically interest on the fuel adjustment amounts ASC collected for winter ore movements as the jury determined that the VTA did not require Oglebay/ASC to provide winter ore shuttles. The jury awarded Cliffs $1,746,939.24 on its breach of contract claim against Oglebay and $2,000,000 on its breach of contract claim against ASC. The interrogatories and verdicts did not itemize damages in any way. The parties entered the following stipulation which was given to the jury:

2

> The parties stipulate that the total amount of fuel adjustments in dispute between May 1, 2002 and May 1, 2008 is $4,054,794.56.
> Of that amount, $1,746,939.24 was billed and paid by Cliffs Sales Company prior to June 6, 2006, and $2,307,855.32 was billed and paid by Cliffs Sales Company after June 6, 2006.

The Jury subtracted $307,855.32 from the amount of fuel adjustments paid by Cliffs to ASC in its $2,000,000 verdict against ASC in favor of Cliffs.  The Court will not speculate why the jury deducted $307,855.32.   In any event, the Court presumes that the damage award is consistent with the Jury's findings in the interrogatories and that the entire amount is properly due and owing to Cliffs.  As such, interest will be assessed on the entire award of $2,000,000.

Oglebay objects to the time period for which Cliffs seeks assessment of interest. Specifically, Oglebay contends that no prejudgment interest can be assessed for the time period prior to May 23, 2006.  Rather, Oglebay argues that interest should not begin to accrue until, at the earliest, the time when Cliffs notified Oglebay that it had made overpayments by "mistake" and Oglebay had a reasonable time to investigate.  That date would be sometime after May 23, 2006. Cliffs has argued that interest runs from the date each overpayment was made through the date of the verdict regardless that payments were made by mistake before May 23, 2006.

Ohio Rev. Code § 1343.03(A) provides for the assessment of prejudgment interest "when money becomes due and payable upon any bond, bill, note or other instrument of writing...." Ohio courts agree that an award of prejudgment interest is compensation to the plaintiff for the period of time between accrual of the claim and judgment. *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 117, 652 N.E.2d 687. The focus is on whether the injured plaintiff has been fully compensated. *Id.* Once it has been determined that an award of prejudgment interest is justified, it is within the trial court's discretion to fix the date the claim

3

accrued for computation purposes. *Nethery v. State Farm Ins. Cos.,* 146 Ohio App.3d 282, 285-86, (8th Dist.Ct. App. 2001) *citing Landis v. Grange Mut. Ins. Co.,* 82 Ohio St.3d 339, 342, 695 N.E.2d 1140 (1998).

In this case Cliffs and Oglebay had different interpretations of the VTA regarding the fuel adjustments. Oglebay asserts that it should have been obvious to Cliffs that Oglebay believed that the half cent fuel adjustment was applicable to all cargoes transported from CBT to Mittal regardless of whether they arrived at CBT in a non-USA vessel after Oglebay sent the supplemental invoice to Cliffs in August of 2004. Cliffs paid the supplemental invoice and all subsequent invoices according to Oglebay's interpretation until May 2006. Cliffs raised the issue of its mistake in making overpayments with Oglebay by letter on May 23, 2006.

Oglebay relies on insurance contract cases to support its position that the amount did not become "due and payable" until after Cliffs had notified Oglebay of its claim. In those cases courts generally find that an amount does not become "due and payable" for purposes of Rev. Code § 1343.03(A) until the insured provides notice of a claim. See *Nethery v. State Farm Ins. Cos.*, 146 Ohio App. 3d 282 (2001); *Lincoln Electric Company v St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672 (6th Cir. 2000).

This case however is not an insurance case and amounts became "due and payable" with each invoice sent by Oglebay and were not dependent on some event triggering coverage. While both Cliffs and Oglebay were unaware for several years of the other's differing interpretation of the fuel surcharge provisions of the VTA, the overpayments were made by Cliffs and accepted by Oglebay for four years before the "mistake" came to light. Thus, in most contract cases, contractual interest accrues from the time money should have been paid. *Local Marketing Corp.*

*v. Prudential Insurance Co. of America*, 159 Ohio App. 3d 410, 416 (1st Dist. Ct. App. 2004).

The fact pattern in *Local Marketing Corp.* is most like the situation at bar.  In *Local Marketing*, the parties entered a commercial lease where Local Marketing leased premises from Prudential.  The lease agreement stated that the net rentable area of the leased premises was approximately 5,845 square feet.  Local Marketing paid rent and operating expenses based upon the square footage of the premises and Prudential was required to contribute based upon the square footage to the costs of Local Marketing's build-out work.  Three years into the lease Local Marketing measured the square footage of the leased premises and found that the premises had 487 fewer square feet than what had been stated in the lease. Both parties had been unaware of the mistake in the stipulated square footage provision in the lease.  Local Marketing sued Prudential for breach of contract, fraud and mutual mistake.  The trial court found in favor of Local Marketing on its breach of contract claim and granted judgment for the overpaid rent and judgment to Prudential for the difference in build-out payments, directed a verdict in favor of Prudential on the fraud claim and did not award prejudgment interest.  On appeal, the Court determined that both parties should have been granted prejudgment interest in accordance with § 1343.03(A) and that "accrual of the claim here occurred with each overpayment that [Local Marketing] and Prudential made for their respective obligations under the lease" rather than when Local Marketing filed suit.  *Id.*  Following this rationale, the proper date for the accrual of prejudgment interest in this action is the date that each overpayment was made.

## II. Declaratory Relief

Cliffs requests that the Court amend the Judgment to enter a declaration for the remaining term of the VTA that Cliffs may only be charged the 1/2 cent per gross ton fuel adjustment when

ASC vessels shuttled iron ore pellets from CBT to the Mittal Ore Dock that were originally

delivered to CBT by vessels other than USA vessels.  The requested declaration is the subject of

Interrogatory No. 2 which the jury answered in favor of Cliffs. The jury found by a

preponderance of the evidence that:

> Oglebay and American Steamship may charge a 1/2 cent fuel adjustment
> on cargoes loaded at the Cleveland Bulk Terminal ONLY where a non-
> USA vessel delivered the iron ore pellets to the Cleveland Bulk Terminal.

Interrogatory No. 2.  The Jury's Interrogatory Answers and Verdicts were copied verbatim into

the Judgment. The parties are bound by these findings and they are sufficient to establish the

parties' rights and obligations regarding the fuel adjustment provision of the VTA going

forward.

Review of the factors set forth in *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir.

2008) confirms that the Court should not exercise its jurisdiction under the Declaratory

Judgment Act to enter a redundant declaration in the case at bar.  The factors are:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in
> clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose
> of "procedural fencing" or "to provide an arena for res judicata;"
> (4) whether the use of a declaratory action would increase friction
> between our federal and state courts and improperly encroach upon state
> jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Id.* at 554.   In this case the jury verdict and interrogatories settle the controversy and a

declaration is not needed to clarify the legal relations in issue.  The judgment in this case will

have res judicata effect and is an effective remedy for the parties' claims.  In short, the

declaration requested by Cliffs is redundant and unnecessary.  Accordingly, the Court will not

6

exercise its discretion to enter the requested declaration.

### III. Judgment Applicable to Northshore Mining Company

The Judgment will be amended to reflect the stipulation of the parties that Northshore Mining Company will benefit and be bound by the judgment in the consolidated actions in the same manner as Cliffs.  Any judgment as to Cliffs would be applicable to the claims and defenses of Northshore.

### IV. Rule 54(b) Certification

Cliffs seeks entry of final judgment pursuant to Rule 54(b) on all claims between Cliffs and ASC and between Cliffs and Oglebay.  As ASC and Oglebay have no objection to such certification after the Court rules on their post trial motions, the Court will enter an Amended Judgment in accordance with this opinion and certify that there is no just cause for delay.

### Conclusion

The parties are directed to submit their estimate of the prejudgment interest that should be assessed in this case calculated as directed in this opinion within ten days of the issuance of this Order.  Thereafter, the Court will enter an Amended Judgment in accordance with this opinion.

IT IS SO ORDERED.


_/s/Donald C. Nugent_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED:__August 18, 2008_____

7